|  | IN THE CIRCUIT COURT OF THE<br>11th JUDICIAL CIRCUIT IN AND FOR<br>MIAMI DADE COUNTY, FLORIDA |
|---|---|
| GORDON BELLO,<br>formerly known as<br>JESUS FERNANDEZ, JR.,<br>　　　　Plaintiff, |  |
|  | CIRCUIT CIVIL DIVISION / Section 31 |
| vs.<br>JERRY FALWELL, JR. et al.,<br>　　　　Defendants.<br>_____/ | CASE NO.: 2017-021496-CA-01 |

## AMENDED COMPLAINT FOR DAMAGES

Plaintiff, Gordon Bellow, formerly known as Jesus Fernandez, Jr., amends and relates back his complaint previously filed, and states as follows:

## PARTIES

1. Plaintiff, Gordon Bello, ("Bello"), formerly known as Jesus Fernandez, Jr., is a resident of Miami-Dade County, Florida.

2. Defendant, Jerry Falwell, Jr., ("Falwell") is a resident of Virginia and he is the President of Liberty University, a position he has held since 2007.

3. In addition to his position as President of Liberty University, the Defendant Falwell, has at least 20 years of real property legal practice and experience investing in and developing real estate.

## NON-PARTIES

4. Liberty University is a private evangelical Christian university in Lynchburg, Virginia.

5. It is one of the largest Christian universities in the world and the largest private non-profit university in the United States, measured by student enrollment.

6. Rebecca T. Falwell ("Rebecca") is the wife of Defendant Jerry Falwell, Jr.

7. Jerry L. Falwell, III, a/k/a Trey Falwell, is the adult son of Rebecca T. Falwell and Jerry Falwell, Jr.

8. Giancarlo Granda ("Granda") was a close friend of the Plaintiff Bello, and Granda developed a close personal relationship with Defendant Falwell and Rebecca T. Falwell.

9. Chris Doyle ("Doyle), according to Defendant Falwell, is Falwell's business partner in real estate ventures in Virginia; however, Doyle was brought in specifically to assist Falwell in confirming the profitability of the purchase of real property with an ongoing hostel business on site as being presented by Bello.

## JURISDICTION

10. This Court has subject matter jurisdiction because the Plaintiff Bello seeks monetary damages well in excess of $15,000.

11. This Court has "long-arm" personal jurisdiction over the Defendant Falwell pursuant to F.S. §48.193 (1)(a)7 resulting from Falwell's breaching a contract in Florida by failing to perform acts required by the contract to be performed in Florida.

12. Defendant Falwell entered into a contract with Plaintiff Bello whereby Falwell agreed that in exchange for Bello's assistance in arranging for a suitable business venture in Florida that Bello and Granda would receive equal equity interests and benefits, including positions and salaries as co-managers, of the business.

13. Falwell breached the contract entered into in Florida by:

    a. failing to add Bello in the filing with the Florida Division of Corporations as a member and manager of Alton Hostel LLC, a Florida for profit corporation;
    b. failing to provide Bello the equity interest in Florida in Alton Hostel LLC, and
    c. failing to pay to Bello in Florida the promised managerial salary.

14. After the acquisition of the hostel business, despite his promise and subsequent reassurance, Defendant Falwell breached his agreement with Bello, but did provide Granda with the promised equity and benefits, including naming Granda as a co-manager of the business, Alton Hostel LLC, which owns the real property located at 810-820 Alton Road, Miami Beach, FL. (the "Alton Road Property") and operates the hostel business and other rentals thereon.

15. In addition to breaching the contract by failing to perform acts in Florida (as stated above), the Defendant Falwell's numerous contacts in and with the State of Florida are sufficient such that this Court has personal jurisdiction over the Defendant Falwell.

16. Falwell's activities and connections with the State of Florida were such that it was foreseeable that his conduct would result in the exercise of this Court's personal jurisdiction over him without offending traditional notions of fair play and substantial justice include the following:
    a. Personal trips by Defendant Falwell into Florida during which he met and discussed the initiation of a business venture in Florida to include the acquisition of real property in Florida.
    b. Emails, phone calls and/or text messages by Falwell into the State of Florida related to the acquisition and formation of the business of which Plaintiff Bello was to benefit from
    c. Defendant Falwell having personally signed documents leading to the acquisition of Florida real property located at 810-820 Alton Road, Miami Beach, FL. (the "Alton Road Property").
    d. Defendant Falwell having engaged Florida attorney to form an LLC (to take title to the Alton Road Property and conduct the hostel business) of which Bello and Granda were to manage and equally share equity interest and benefits.
    e. Defendant Falwell having personally loaned at least $1million dollars for the purchase of the Alton Road Property.
    f. Defendant Falwell having personally loaned at least another approximately $800,000 for renovations of the Alton Road Property.

17. Although the Alton Road Property and the hostel business thereon are titled in the name of Alton Hostel LLC, a Florida limited liability company, the Plaintiff alleges, upon information and belief, that it is the Defendant Falwell who had or has control or who is the "de facto" owner.

18. Defendant Falwell provided the funds for the purchase of the Florida property.

19. Defendant Falwell has "de facto" control of the Florida LLC through his adult son, Trey Falwell. [1]

20. Significantly, it was Defendant Falwell who directed or caused Granda to be given an equity interest and management position in Alton Hostel LLC and to be listed as a co-manager and member of Alton Hostel LLC with the Florida Division of Corporations.

21. After the formation of Alton Hostel LLC, Defendant Falwell was contacted as to why Plaintiff Bello and Granda were not shown as managers and members on the filing with the Florida Division of Corporations.

22. Defendant Falwell represented that he would have that filing corrected and that he intended to keep his word.

23. Plaintiff Bello relied upon that representation to refrain from taking legal action at that time.

24. Plaintiff Bello's reliance on the word of Falwell was justified by the position that Defendant Falwell holds as President (and leader) of one of the largest evangelical Christian universities in the world.

25. Despite the promise and representation of Defendant Falwell, the correction subsequently made with the Florida Division of Corporations listed Granda and not Plaintiff Bello.

---

[1] Falwell positioned or had named as co-manager and, upon information and belief, Trey Falwell and Rebecca T. Falwell are the only other members and have the majority LLC membership interest.  It is not yet known how or what consideration was given by Trey Falwell to acquire his management and membership interest, or the contribution of Rebecca T. Falwell to the capital of the LLC.

26. Upon discovery it may be shown that Defendant Falwell, by his "de facto" control or ownership of Alton Hostel LLC, is indirectly "carrying on a business venture" in Florida and therefore additionally subject to long arm jurisdiction pursuant to F.S. 48.193(1)(a)1.

27. More specifically, the instances summarized below demonstrate some of the Florida contacts by Defendant Falwell personally or through his agent, Doyle, that relate to the cause of action in this lawsuit; namely, that Defendant Falwell breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

28. The below referenced Exhibits 1-11, 14, 16 &17, are those which have been attached to and filed with the Plaintiff's Notice of Re-Filing Plaintiff's Affidavit In Support of Jurisdiction (filed 05/21/2019).

EXHIBIT __1___ July 1, 2012, email sent into Florida from Doyle (copy to Falwell) to Gallegos, (the Florida realtor representing Falwell) in which Doyle writes:  *"I have been reviewing a lot of the information I collected and working this weekend on how this can play out for Jerry going forward."*

EXHIBIT __2___ July 16, 2012, Letter signed by Falwell and Doyle submitting in Florida a Letter of Intent for purchase of 810-820 Alton Road property (the "Alton Road Property"), located in Miami Beach, Florida.

EXHIBIT __3___ July 17, 2012, Letter of Intent submitted in Florida signed by Falwell as "*the Purchaser*" expressing the intent to form a new Florida LLC before Closing on the purchase of the Alton Road Property.

EXHIBIT __4___ Aug. 5, 2013, Falwell text into Florida from his Verizon Wireless Blackberry to Gallegos (the Florida realtor representing Falwell) that:  *"Here is the LOI that I gave to Joe on Friday, FYI."*

EXHIBIT __5___ Aug. 17, 2012, email into Florida from Falwell to Gallegos (the Florida realtor representing Falwell) in which email Falwell admits that he met directly with the Alton Road Property seller, Joe Comesana.

EXHIBIT __6___ Oct. 26, 2012, email into Florida from Falwell to Gallegos (the Florida realtor representing Falwell)

EXHIBIT __7___   Nov. 8, 2012, email into Florida from Falwell informing Gallegos that Falwell communicated directly with the seller, Joe Comesana, and sent Joe a new LOI (letter of intent) for purchase of the Alton Road Property.

EXHIBIT __8___   Nov. 28, 2012, email into Florida from Falwell informing Gallegos that the sellers (Joe & Becki Comesana) executed the contract for the sale of the Alton Road Property containing a due diligence period.

EXHIBIT __9___   Jan. 22, 2013, email into Florida from Falwell to Gallegos that the seller has code issues and a third party claim against personal property.  Falwell writes:  *"I am trying to resolve it all with an escrow but, if it isn't resolved very soon, I am backing out."*

EXHIBIT __10____   Jan. 25, 2013, email into Florida from Falwell to Gallegos that seller extended the contract's due diligence period to correct code violations, etc.

EXHIBIT __11___   Jan.31, 2013, signed in or transmitted into Florida, Addendum No. 2 to Contract [Florida Association of Realtors © form]  showing in small typed print "Jerry Falwell" as "Buyer", but then stricken through in pen and signed by Rebecca T. Falwell, as Manager for Comeback Inn, LLC.   (Note:  As of this date, there is no record that has been found on file with Virginia State Corporation Commission naming Rebecca T. Falwell as a Manager of Comeback Inn, LLC.)

EXHIBIT __14____   Feb. 21, 2013, Warranty Deed to Alton Hostel, LLC prepared by Florida attorney, David E. Horvath, Esq. referencing "File Number: FALWE001."   Falwell at #28 and #75 of his Sworn Affidavit admits that **Falwell gave advice to "Comeback Inn"** in considering the "Alton Road Property" and assisted it in *"…engaging Florida legal counsel to represent it in a transaction"* (involving said real property in Florida).

EXHIBIT __16__,  Falwell is President of Liberty University, Inc. shown in Florida Division of Corporations as registered "active" to do business in Florida as a foreign not for profit corporation.

EXHIBIT ___17___Liberty University is actively licensed with Florida Department of Business and Professional Regulation as a Continuing Education Provider, and Falwell has been the President of Liberty University since 2007.

## **VENUE**

29. The contract that is the subject of this lawsuit was formed in Miami-Dade County, Florida and was to be performed in Miami-Dade County, Florida.

30. The contract that is the subject of this lawsuit was breached in Miami-Dade County, Florida by Falwell's failure to perform acts in Miami-Dade County that he agreed to do; namely, to provide Bello with an equal share in the equity interest and benefits that Granda would receive, including a salaried position to co-manage the Alton Road Property hostel business known as Alton Hostel LLC.

## FACTS

31. Plaintiff Bello and Giancarlo Granda ("Granda") have known each other ever since they attended the same high school together.

32. Jerry Falwell, Jr. and Rebecca T. Falwell (his wife), while vacationing at the Fontainebleau Hotel in Miami Beach, FL., became acquainted with Granda (then age 21) who was working at the Fontainebleau Hotel as a pool attendant ("poolboy").

33. Granda introduced Bello to Rebecca T. Falwell first, which resulted in a personal relationship between Bello and Rebecca T. Falwell. Later Granda introduced him to Jerry Falwell, Jr.

34. The Falwells (Jerry Falwell, Jr. and his wife, Rebecca T. Falwell) actively promoted and encouraged a friendly relationship with both Bello and Granda.

35. Granda was often in the company of the Falwells outside of Granda's employment as a poolboy.

36. Such accompaniments included strolling along Lincoln Road together, flight on a private jet with the Falwells, dining together, and attending events together.

37. Granda confided in Bello that Falwell had offered to put Granda into a new line of work and that Falwell had told Granda was to come up with an idea for a profitable business that included a real estate component in Florida and that Falwell would purchase and establish this new business for Granda.

38. Granda asked for Bello's help knowing that Bello had connections and ideas through Bello's father who had years of experience and knowledge about properties and business opportunities in the Miami Beach area, and that Bello's then girlfriend was the assistant manager at the largest hostel business in South Beach, where Bello also worked managing the front desk of said hostel.

39. Knowing the hostel business and how profitable it was, Bello proposed the idea of acquiring a hostel business to Granda and that Bello's father could find out what properties listed for sale would be suitable for purchase and recommend a realtor.

40. Granda asked Bello to pitch the idea to Falwell.

41. During a meeting at the Loews Hotel in Miami Beach, Florida, attended by Falwell, Granda, Jesus Fernandez Sr., and Bello, the idea of a hostel business in South Beach was pitched to Falwell.

42. Falwell endorsed the idea of a real estate purchase with an existing hostel business because he realized that land values in Miami Beach were going to substantially appreciate in value and that there would be greater profits if the business owned the real estate on which it was operating.

43. Falwell asked Bello to further develop the idea from concept to acquisition by continuing to provide ideas and information.

44. Falwell recognized that Bello had both experience and access to knowledge about managing a hostel business, and during the meeting Falwell promised Bello that for Bello's part he would have an equal share of whatever Granda got in the

venture, including management position, if it came about that a suitable property and hostel business could be found and purchased.

45. For his part, Bello continued to provide valuable information to Falwell as shared through and with Jesus Fernandez, Sr., Granda and others, including Doyle, and the realtors, Luigi Gallegos and Jeannette Faciolince.

46. The information provided by Bello related to development of a business plan to go forward in acquiring the Alton Road Property and the profits to be made from proper management, operation and development of the existing hostel business on the Alton Road Property.

47. Profits from the operation of a hostel business were reasonably within the contemplation of Falwell of both Bello and Falwell when he entered into the contract with Bello.

## BREACH OF CONTRACT

48. Plaintiff Bello realleges and incorporates herein all of the preceding allegations as well as those facts set forth in paragraphs # 31 thru 47.

49. Defendant Falwell entered into a contract with Plaintiff Bello which terms were that In exchange for the idea, information and assistance provided by Bello (including through his father, Jesus Fernandez, Sr.) Falwell agreed that upon the acquisition of the real property (the "Alton Road Property") with the hostel business component, the Plaintiff Bello was to equally share in the equity interest and benefits that Granda would receive, including a salaried co-management position for managing the hostel business.

50. Bello fully performed his part of the agreement.

51. When Alton Hostel LLC was formed to take title to the Alton Road Property and to operate the businesses thereon, including the hostel business, the initial filing with the Florida Division of Corporations did not show Bello or Granda as having any interest or position.

52. Upon being contacted about that, Falwell reaffirmed the contract by representing that it would be corrected.

53. Well prior to his introduction to Falwell, Bello had researched who Falwell was and found out that Falwell was the President of one of the world's largest private evangelical Christian universities in the world and that he was highly regarded as a religious man with a large following of supporters.

54. Accordingly, Bello relied upon the representation that it would be corrected.

55. Thereafter on or about Jan. 6, 2014, Falwell had Granda to the records in the Division of Corporations as manager and Granda received an equity interest in Alton Hostel LLC.

56. Bello was to have been a co-manager with Granda and Bello was to have received an equity membership equal to that received by Granda.

57. However, Bello was not added to the Division of Corporations records nor was Bello provided with the promised equity ownership in Alton Hostel LLC despite the reaffirmation of the contract by Falwell.

58. Thereafter, Falwell ceased any communication with Bello and ignored entreaties to "live up to" the contract and promises Falwell had made.

59. Plaintiff Bello has suffered general and special damages as a direct result of Defendant Falwell's breach of contract.

60. The damages suffered by Bello are the following:
    a. Loss of equity membership in Alton Hostel LLC
    b. Loss of profits from the operation of the hostel business and the rentals of the other spaces purchased as part of the Alton Road Property;
    c. Loss of salary and benefits for the specific undertaking of managerial position of the hostel business, Alton Hostel LLC.

61. All conditions precedent to bringing this cause of action have been performed or if not performed have been waived or excused by the conduct of the Defendant Falwell.

**WHEREFORE,** Plaintiff Bello demands a jury trial and for compensatory and special damages as set forth above.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a correct copy of the foregoing was filed via Florida Courts E-Filing Portal this 31st day of July 2019 for e-service to:

Joshua B. Spector, Esq., 283 Catalonia Ave., Suite 200, Coral Gables, FL. 33134; joshua@spectorlegal.com

> ADDICOTT & ADDICOTT, P.A.
> Attorneys for Plaintiff
> 900 N. Federal Highway, Suite 201
> Hallandale Beach, FL 33009
> Phone  (954) 454-2605
> mlaesq@addicottlaw.com / sari@addicottlaw.com
> By:__/s/ Michael L. Addicott_____
> Michael L. Addicott / FBN 456446