IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GORDON BELLO, formerly known
as JESUS FERNANDEZ, JR.

CIRCUIT CIVIL DIVISION / Section 31

     Plaintiff,

CASE NO.: 2017-021496-CA-01

v.

JERRY FALWELL, JR.

     Defendant.        /

### DEFENDANT JERRY FALWELL, JR.'S MOTION TO DISMISS THE AMENDED COMPLAINT FILED BY PLAINTIFF GORDON BELLO

Defendant Jerry Falwell, Jr. ("Defendant" or "Falwell"), by counsel, pursuant to Rule 1.140 of the Florida Rules of Civil Procedure, submits this combined motion to dismiss and memorandum of law in response to the Amended Complaint filed by plaintiff Gordon Bello, formerly known as Jesus Fernandez, Jr. ("Plaintiff" or "Bello") based upon a lack of personal jurisdiction and a failure to state a cause of action.

### INTRODUCTION

Even after an opportunity to amend his complaint, Plaintiff remains incapable of articulating a colorable claim. The Amended Complaint pursues a single cause of action, but the jurisdictional allegations remain insufficient to support an exercise of personal jurisdiction over a nonresident defendant. Plaintiff cannot rely exclusively on Falwell's alleged failure to satisfy an oral promise that Bello would receive an ownership interest in a future to-be-formed entity. Even if such a promise had been made and Falwell possessed authority to fulfill the promise, he would not have been obligated to perform any action inside Florida. His other limited activities in the state are similarly insufficient to overcome the statutory and constitutional safeguards afforded to nonresidents.

More fundamentally, Plaintiff cannot properly allege the existence of an enforceable contract. The alleged agreement to go into business together is impermissibly vague, and the timeline of events in the Amended Complaint negates any possibility of a meeting of the minds. At best, Bello alleges that Falwell was intrigued by his "pitch," and the parties discussed the possibility of going into business together in the future. Florida law will not enforce an agreement to agree.

Finally, the original complaint was dismissed in part because Plaintiff relied upon nonspecific "lumped" allegations directed at several defendants. This practice continues. While pursuing a single claim against a single defendant, Plaintiff seeks to assign vicarious liability to Falwell for the actions of every individual identified in the Amended Complaint by summarily labeling him the "de facto" owner of a business enterprise. Even if true, Florida law limits the exposure of owners (de facto or otherwise) for the acts or omissions of a limited liability company, and the Statute of Frauds expressly prohibits enforcement of unwritten promises to convey real property or satisfy the debts of another.

For all these reasons, Defendant respectfully requests that the Court dismiss the Amended Complaint with prejudice.

## TABLE OF CONTENTS

RELEVANT FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT ................................................. 3

LEGAL STANDARDS .............................................................................................................. 4

ARGUMENT ........................................................................................................................ 5

  I.   The Amended Complaint Lacks Factual Allegations to Support an Exercise of Personal Jurisdiction over Falwell. ............................................................................................. 5

      A.   Plaintiff Fails to Allege that Falwell Breached an Obligation Required to be Performed in Florida. ...................................................................................... 6

      B.   The "Corporate Shield Doctrine" Prohibits an Exercise of Personal Jurisdiction Over Falwell for Actions Undertaken in a Corporate Capacity. ............................ 9

C.      The Jurisdictional Allegations Fail to Satisfy the More Stringent Constitutional
        Standard. ............................................................................................................... 10

II.     The Plaintiff has Failed to State a Claim for Breach of an Enforceable Oral Contract.... 13

A.      The Contract Terms are Vague, and the Timeline of Events Does Not Support a
        Reasonable Inference that the Parties had a Meeting of the Minds...................... 14

B.      A "De Facto" Owner Cannot be Held Directly Liable for the Alleged Debts of a
        Properly Formed Limited Liability Company. ..................................................... 18

C.      Plaintiff's Oral Contract Claim is Barred by the Statute of Frauds. ..................... 19

CONCLUSION ................................................................................................................................ 20

CERTIFICATE OF SERVICE ............................................................................................................ 21

## RELEVANT FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT[1]

The Amended Complaint alleges that Bello and Falwell orally agreed to enter into the following agreement:

> Defendant Falwell entered into a contract with Plaintiff Bello whereby Falwell agreed that in exchange for Bello's assistance in arranging for a suitable business venture in Florida that Bello and Granda would receive equal equity interests and benefits, including positions and salaries as co-managers, of the business.

*See* Am. Compl. ¶ 12.  Plaintiff alleges only one face-to-face encounter or conversation between Bello and Falwell, which is described as follows:

> During a meeting at the Loews Hotel in Miami Beach, Florida…*the idea of a hostel business in South Beach was pitched to Falwell*.

> Falwell endorsed the idea of a real estate purchase with an existing hostel business because he realized that land values in Miami Beach were going to substantially appreciate in value and that there would be greater profits if the business owned the real estate.

> *Falwell asked Bello to further develop the idea* from concept to acquisition by continuing to provide ideas and information.

---

[1] When considering a motion to dismiss, Florida practice requires that the parties and the Court treat all properly alleged facts as true.  *See, e.g., Atha v. Allen P. Van Overbeke*, 213 So. 3d 1073, 1074 (Fla. 2d DCA 2017).  The alleged facts have been restated exclusively to challenge the viability of Plaintiff's Amended Complaint.

*Id.* ¶¶ 41–43 (emphasis added).  No further communication is alleged between Falwell and Bello. After the face-to-face meeting, Bello claims to have provided additional, unspecified "valuable information" to further develop the venture, but he does not claim to have provided any such information to Falwell directly.  *Id.* ¶ 45.

### LEGAL STANDARDS

**Personal Jurisdiction.**  Personal jurisdiction requires a forum-by-forum analysis.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011).  In Florida, an exercise of personal jurisdiction over a nonresident defendant requires satisfaction of both Florida's long-arm statute and the due process protections of the United States Constitution.  *See Wadley v. Nazelli*, 223 So.3d 1118, 1121 (Fla. 3d DCA 2017).  In determining whether the complaint alleges sufficient jurisdictional facts to bring the action within Florida's long-arm statute, "the trial court must strictly construe the statute in favor of the non-resident defendant[]."  *Navas v. Brand*, 130 So.3d 766 (Fla. 3d DCA 2014).  If the statutory standard is satisfied, the court must still determine whether the nonresident defendant has sufficient "minimum contacts" with the forum state "that he should reasonably anticipate being haled into court there."  *Wadley v. Nazelli*, 223 So.3d 1118, 1121 (Fla. 3d DCA 2017) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287, 100 S.Ct. 559 (1980)).

**Motion to Dismiss**.  It is a question of law whether a complaint has sufficiently stated a cause of action.  *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 734 (Fla. 2002). Florida's general pleading standard requires the assertion of "ultimate facts showing that the pleader is entitled to relief."  Fla. R. Civ. P. 1.110.  Florida is a fact-pleading jurisdiction, *Continental Baking Co. v. Vincent*, 634 So.2d 242, 244 (Fla. 5th DCA 1994), which requires assertion of facts to support each element of a cause of action—the presentation of "mere conclusions" is insufficient.  *Clark v. Boeing Co.*, 395 So.2d 1226, 1229 (Fla. 3d DCA 1981)

4

(citing *Woodcock v. Wilcox*, 98 Fla. 14, 122 So. 789 (1929); *Maiden v. Carter*, 234 So.2d 168 (Fla.1st DCA 1970)).  Florida's standard is designed to force the parties to address each element of a cause of action to show that facts can be developed to fully support the claim, thereby "avoid[ing] a great deal of wasted expense to the litigants and unnecessary judicial effort." *Horowitz v. Laske*, 855 So. 2d 169, 172–73 (Fla. 5th DCA 2003).

**ARGUMENT**

**The Amended Complaint** should be dismissed for several reasons.  First, Plaintiff has not (and cannot) allege facts that justify an exercise of personal jurisdiction over Falwell in the State of Florida.  Second, the Amended Complaint's vague allegations do not adequately allege ultimate facts or essential terms that would allow enforcement of the oral agreement.  Third, a direct action against Falwell is legally unsupported. And fourth, Florida law bars enforcement of an unwritten contract to assume the debts of another individual.  For these reasons, Defendant respectfully requests that this action be dismissed with prejudice.

**I.**  **The Amended Complaint Lacks Factual Allegations to Support an Exercise of Personal Jurisdiction over Falwell.**

The Florida Supreme Court has identified a two-step test for determining whether an extension of personal jurisdiction over a foreign defendant is appropriate:

> First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.

*Borden v. East–European, Ins. Co.*, 921 So. 2d 587, 592 (Fla. 2006) (quoting *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989)).  This two-step standard applies to assertions of either specific or general jurisdiction.  *See Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So.3d 938, 942 (Fla. 3d DCA 2018).   Here, Bello rightly does not purport to allege general

jurisdiction over Falwell, but the allegations in the Amended Complaint remain insufficient to

justify an exercise of specific jurisdiction.[2]

### A.    Plaintiff Fails to Allege that Falwell Breached an Obligation Required to be Performed in Florida.

With regard to the first step, the plaintiff must allege a specific jurisdictional basis that

accords with the long-arm statute. "[I]t is necessary that the jurisdictional basis for service upon a

non-resident defendant be alleged in the complaint." *Palmer Johnson Yachts v. Ray Richard*, 347

So. 2d 779, (Fla. 3d DCA 1977).

Here, Bello contends that Falwell is subject to specific jurisdiction under the following

subsection of Florida's long-arm statute: "breaching a contract in [Florida] by failing to perform

acts *required by the contract to be performed in this state*." *See* Am. Compl. ¶ 7 (citing Fla. Stat.

§ 48.193(1)(a)(7) (emphasis added)).  In support, Bello alleges the following:

> Falwell breached the contract entered into in Florida by:
> a.  failing to add Bello in the filing with the Florida Division of Corporations as a
>     member and manager of Alton Hostel LLC, a Florida for profit corporation;
> b.  failing to provide Bello the equity interest in Florida in Alton Hostel LLC; and
> c.  failing to pay to Bello in Florida the promised managerial salary.

*Id.* ¶ 13.  These allegations do not satisfy the statutory standard because none of the alleged acts

or omissions were *required* to be performed in Florida.

"This provision 'must be strictly construed in order to guarantee compliance with due

process requirements.'" *Olson v. Robbie*, 141 So. 3d 636, 640 (Fla. 4th DCA 2014).  As a result,

"before *in personam* jurisdiction may attach over a defendant," the plaintiff must properly allege

"a duty to perform an act *in Florida*" that gives rise to his cause of action—not just a duty to

---

[2] To the extent Plaintiff intends to allege existence of general jurisdiction, Falwell respectfully requests the opportunity to demonstrate that no plausible facts can be alleged to show that he is "essentially at home in the forum." *See Imerys Talc America, Inc. v. Ricketts*, 262 So. 3d 799, 802 (Fla. 4th DCA 2018) (adopting the holding in *Damiler AG v. Bauman*, 571 U.S. 117, 138, 134 S.Ct. 746 (2014)) (internal quotations omitted).

perform an act on behalf of a Florida resident. *Id.* at 640 (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999)) (emphasis in original). It is not enough that performance *could have* been performed in Florida; instead, "the contract itself must *require* performance in Florida." *Id.* (citing *Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc.*, 726 So. 2d 313, 314 (Fla. 4th DCA 1998)) (emphasis in original); *see also Wills v. Royal Caribbean Cruises Ltd.*, Case No. 1:17-cv-21890-JLK, at *3 (S.D. Fla. Sep. 13, 2018).

   *Olson* is particularly analogous and instructive here. The parties were children of Joe Robbie, the founder and former owner of the Miami Dolphins. The nonresident sibling defendant, Olson, was a party to a shareholder agreement for a Florida corporation with wide-ranging business interests. The sibling-plaintiffs sued Olson for her alleged breach of contractual duty to provide them with access to corporate documents. 141 So. 3d at 638.

   Olson lived outside the state, though she had formerly been a long-time resident. She did not regularly conduct business activities in Florida; she did not own any property in Florida; and she had only been to Florida "a handful of times" in 10 years. However, the defendant served on the corporation's board of directors, was a managing partner and former chief executive officer, and she continued to attend the entity's board meetings in Florida. *Id.* at 638–39. Moreover, as a shareholder and director of the Florida entity, Olson had availed herself of Florida courts to pursue company-related litigation. Olson had been on the board for 20 years, and the company's annual reports revealed that she had been the president and/or CEO for at least 14 of those years. *Id.* at 639. Olson was also a co-trustee of her late mother's Florida trust, which required court appearances for the trust's administration. *Id.* The sibling-plaintiffs asserted that Olson executed the Florida entity shareholder agreement with the aid of Florida counsel, and most importantly, she was contractually obligated to provide access to the corporate records of a Florida entity. *Id.*

Despite all these relevant connections to the forum and the cause of action, the court nonetheless reasoned that the express contract did not "explicitly require Olson to perform any act in Florida whatsoever." *Id*. at 640. Rather, "any [required] sharing of information could be performed by Olson from any location at all, including either South Dakota, Minnesota, or Florida." *Id*.

Here, the Amended Complaint alleges that Falwell failed to (1) list Bello as a member and manager of Alton Hostel; (2) provide an undetermined equity interest in Alton Hostel to Bello; and (3) exert his control to have Bello employed as a manager of Alton Hostel. Am. Compl. ¶ 13. Even if Falwell had made those promises and possessed authority to carry them out, he could have performed these functions from Virginia, or even from "South Dakota, Minnesota, or Florida."

Indeed, regarding the first and second alleged breaches, an authorized manager of Alton Hostel, LLC could make corporate filings on www.sunbiz.org from any location with Internet access or through the ordinary mail. Indeed, the publicly-filed Articles of Organization for Alton Hostel, LLC identify a single member manager and a mailing address in Virginia. *See* Articles of Organization, attached as Exhibit A.[3] As for the third alleged breach, the business entity itself was to employ Bello in Florida. To the extent Falwell could exert influence and authority to effectuate Bello's hiring, that influence could have been—and indeed must have been—exercised in Virginia where the majority members of the limited liability company reside. *See* Am. Compl. ¶ 19.

In short, every purported obligation could have been performed by Falwell in Virginia or indeed anywhere outside of Florida. The effects of such performance might ripple to Florida where

---

[3] Court may take judicial notice of business records publicly filed with the Florida Secretary of State. Fla. Stat. § 90.202(5), (12), (13); *see also Chakra 5, Inc. v. City of Miami Beach*, 254 So. 3d 1056, 1062 n.7 (Fla. 3d DCA 2018) (quoting *Schriver v. Tucker*, 42 So.2d 707, 709 (Fla. 1949) ("This court will take judicial notice ... of the records of extradition proceedings on file in the office of the Secretary of State. And the failure of the lower court to take judicial notice of these records does not necessarily prevent this court from so doing.")). Moreover, and for the sake of completeness, Falwell hereby respectfully requests that this Court take judicial notice of Exhibit A, a public record, under Section 90.203, Florida Statutes.

Bello resides, but Florida's long-arm statute is strictly construed to prohibit personal jurisdiction arising from duties that could be performed outside of Florida. *See Olson*, 141 So. 3d at 640.

### B.   The "Corporate Shield Doctrine" Prohibits an Exercise of Personal Jurisdiction Over Falwell for Actions Undertaken in a Corporate Capacity.

The limited actions allegedly undertaken by Falwell on behalf of Alton Hostel, LLC cannot provide the basis for an exercise of personal jurisdiction—even if Falwell is alleged to be the "de facto" owner of the LLC. Florida's corporate shield doctrine "provides that acts performed by a person exclusively in his corporate capacity not in Florida but in a foreign state may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state." *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012) (citing *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993)). "The rationale behind the corporate shield doctrine is that it may be unfair to force an individual to defend an action filed against him personally in a forum with which his only relevant contacts are acts performed totally outside the forum state and not for his own benefit but for the exclusive benefit of his employer." *Kitroser*, 85 So. 3d at 1088.

"The corporate shield doctrine draws a distinction between a corporate officer acting on his own and a corporate officer acting on behalf of his corporation." *Carter v. Estate of Rambo*, 925 So. 2d 353, 356 (Fla. 5th DCA 2006) (citing *Stomar, Inc. v. Lucky Seven Riverboat Co., L.L.C.*, 821 So.2d 1183 (Fla. 4th DCA 2002)). "Under the corporate shield doctrine, any activity in one's capacity as a corporate officer or director is exempted from consideration in support of the exercise of long-arm jurisdiction over said officer or director." *Id*. (citing *Radcliffe v. Gyves*, 902 So.2d 968 (Fla. 4th DCA 2005)). In *Carter*, the non-resident defendant had signed business reports as the managing member of an LLC in his representative capacity. Nonetheless, the appellate court reversed the trial court, finding such contact to be insufficient to bring the executive non-resident

defendant into court on an individual basis.  *See* 925 So. 2d at 356 (*citing Doe v. Thompson*, 620 So. 2d 1004, 1005–06 (Fla. 1993)).

For the same reasons, Bello fails to allege actions that can be attributed to Falwell personally.  Because the alleged breach concerns Falwell's failure to perform a corporate function outside Florida, the corporate shield doctrine precludes an exercise of personal jurisdiction.  *See, e.g., Eller v. Allen*, 623 So. 2d 545, 547 (Fla. 5th DCA 1993) (holding personal jurisdiction over nonresident corporate officers did not properly exist when the plaintiff failed to allege any facts indicating that officers had *personally* engaged in any activity within the state of Florida).

## C.   The Jurisdictional Allegations Fail to Satisfy the More Stringent Constitutional Standard.

Unlike many other states, the standard established by Florida's long-arm statute is not coextensive with the constitutional standard, which "imposes a more restrictive requirement" than the long-arm statute.  *See Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1207 (Fla. 2010).  If the allegations fail to satisfy the statutory inquiry, the Court does not need to consider the more stringent constitutional standard.  *See Vance v. Tire Eng'g & Distrib., LLC*, 32 So. 3d 774, 776 (Fla. 2d DCA 2010).

If the analysis proceeds, the Court must determine whether the nonresident defendant has sufficient "minimum contacts" with the forum state to satisfy due process concerns, i.e., whether the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."  *Wadley v. Nazelli*, 223 So.3d 1118, 1121 (Fla. 3d DCA 2017) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287, 100 S.Ct. 559 (1980)).  The Fourteenth Amendment requires evidence of the following:

> (1) the contacts [with the forum state] must be related to the plaintiff's cause of action or have given rise to it; (2) the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby

invoking the benefits and protections of its laws; and (3) the defendant's contacts with the forum state must be such that it should reasonably anticipate being hailed into court there.

See *Zanakis v. Scanreco, Inc.*, Case No. 18-cv-21813, 2019 WL 2211872, at *5 (S.D. Fla. Feb. 6, 2019) (quoting *Hatton v. Chrysler Canada, Inc.*, 937 F. Supp. 2d 1356, 1365 (M.D. Fla. 2013)).

The jurisdictional allegations in the Amended Complaint fall short of those standards, as shown by the previously-filed affidavits of Jerry Falwell, Jr. and Christopher Doyle ("Falwell Aff." and "Doyle Aff.", respectively).[4]  Falwell lives and works in Virginia.  *See* Falwell Aff. ¶¶ 1–7. He does not conduct regular business in Florida, and he has only "traveled to Florida on a few occasions over the last several years, and that travel always involved vacation with [his] family." *Id.* ¶¶ 5–6.  Falwell never owned any real property in Florida, nor has he owned any portion of a Florida business.  *Id.* ¶ 9–10; *see also* Doyle Aff. ¶ 6.  Falwell has never been involved in the "day-to-day operation" or acted as the "manager, officer, director, or executive" of a Florida business. Falwell Aff. ¶ 12–13.

Falwell's only activity in Florida took place during a pair of family vacations.  On the first trip, Falwell looked at some potential properties on behalf of Comeback Inn, LLC, but he "did not act on or make any offers" nor did he "enter any contracts in [his] personal capacity or on behalf of any business entities."  *Id.* ¶¶ 20–35; *see also* Doyle Aff. ¶ 10.  The advice provided was informal, and Falwell never received a salary or charged fees for his limited assistance.  *See* Falwell Aff. ¶¶ 24, 45–46.  On the same trip, Falwell briefly met with Bello and his father in the lobby of the Loews Miami Beach Hotel, but "[t]his short meeting in the hotel lobby did not result in any agreement."  *Id.* ¶ 26.  Falwell never spoke to Bello about an ownership interest or job opportunity

---

[4]  The Falwell Affidavit was filed in this action on December 4, 2018, and the Doyle Affidavit was filed in this action on December 7, 2018.  A nonresident defendant may challenge jurisdictional allegations through affidavit testimony.  *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).

with Alton Hostel, LLC.  *Id.* ¶ 62–63.  On the second trip, Falwell helped Comeback Inn, LLC secure local counsel.  *Id.* ¶ 28.  All other communication and/or assistance offered by Falwell was performed outside the State of Florida.  *Id.* ¶¶ 6, 38–44.

Falwell's limited activity is unrelated to Plaintiff's cause of action because Plaintiff's alleged injuries were not a "foreseeable consequence" of Falwell's actions.  *See Zanakis*, 2019 WL 2211872, at *5–6 (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009)) (requiring more than a "but-for" analysis, but instead requiring the injury be a "foreseeable consequence" of the forum activity).  The crux of Bello's argument is that Falwell, by offering advice and signing documents for Alton Hostel, LLC, created a sufficient nexus between himself and the cause of action to justify an exercise of jurisdiction.  To the contrary, the emails and letters identified in Plaintiff's affidavit and amended pleading solely concern the preliminary business of Alton Hostel, LLC.  Those communications offer no evidence that the parties entered into an oral agreement, which is directly refuted by affidavit testimony.  Plaintiff's alleged injuries were not a "foreseeable consequence" of Falwell's agreeing to listen to Bello's "pitch," offering advice on potential properties, or helping secure local counsel.

Falwell did not purposefully avail himself of the privilege of conducting business in Florida.  As noted above, Falwell does not own or earn money from either a business or real estate located in Florida.  Falwell Aff. ¶¶ 24, 45– 46.  Even if Alton Hostel, LLC's alleged duty to pay Bello could be imputed to Falwell, the "existence of a contractual relationship between a nonresident defendant and a Florida resident is not sufficient in itself to meet the requirements of due process."  *Jet Charter Serv. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 462, 105 S.Ct. 2174, 2174 (1985)).  Even if a defendant travels to Florida and breaches an obligation that satisfies Florida's long-arm statute, the mere

obligation to pay a plaintiff in Florida is not enough to satisfy minimum due process requirements. "It is well-settled that a failure to pay money in Florida, without more, is insufficient to satisfy the constitutional due process minimum contacts requirement." *Banco Continental, S.A. v. Transcom Bank (Barbados), Ltd.*, 922 So.2d 395, 399 (Fla. 3d DCA 2006) (citing *Venetian Salami Co.*, 554 So.2d 499, 501 (Fla. 1989) (finding that the mere failure to pay money in Florida, standing alone, is insufficient to obtain jurisdiction over a nonresident defend)); *see also Royal Acquisitions 001, LLC v. Ansur Am. Ins. Co.*, No. 1:14-cv-20914-MGC, 2015 WL 1437689, at *5 (S.D. Fla. Mar. 27, 2015*)* (following same).

Finally, an exercise of personal jurisdiction over Falwell in Florida would offend traditional notions of fair play and substantial justice.  He has no ownership interest in the resulting business, and he performed only limited activities in Florida while on vacation.  As discussed in detail above, the *Olson* case disregarded the non-resident defendant's greater, deeper, and longer ties with the State of Florida through her representative capacity of a Florida business entity. 141 So. 3d at 640. The court disregarded Olson's status as a director and CEO of a Florida entity, her filing of annual reports, and her service as a trustee of a Florida trust.  *Id.* at 641.  Under those more compelling facts, the Court found insufficient evidence that Olson purposely established minimum contacts within Florida. *Id.* at 642.

For all these reasons, an exercise of personal jurisdiction over Falwell in Florida cannot be supported by the allegations in the Amended Complaint, and dismissal of this action is appropriate.

**II.**      **The Plaintiff has Failed to State a Claim for Breach of an Enforceable Oral Contract.**

The Amended Complaint fails to properly allege "ultimate facts showing that [Plaintiff] is entitled to relief" because the alleged oral agreement is impermissibly vague and legally unenforceable.  *See* Fla. R. Civ. P. 1.110(b).  To state a cause of action for breach of an oral

contract, a plaintiff is required to allege facts that "demonstrate that the parties mutually assented to a certain and definite proposition" and left no essential terms open.  *See Jacksonville Port Authority v. W.R. Johnson Enterprises, Inc.*, 624 So.2d 313 (Fla. 1st DCA 1993).  This action should be dismissed because the alleged oral contract lacks essential terms, thereby rendering it an unenforceable agreement to agree.  Further, dismissal is appropriate because there is no legal justification for holding Falwell personally responsible for the alleged acts or omissions of a distinct business entity.

### A.     The Contract Terms are Vague, and the Timeline of Events Does Not Support a Reasonable Inference that the Parties had a Meeting of the Minds.

The Amended Complaint alleges that the parties orally agreed to enter into the following business arrangement:

> Defendant Falwell entered into a contract with Plaintiff Bello whereby Falwell agreed that in exchange for Bello's assistance in arranging for a suitable business venture in Florida that Bello and Granda would receive equal equity interests and benefits, including positions and salaries as co-managers, of the business.

*See* Am. Compl. ¶ 12.  However, the Amended Complaint identifies only one face-to-face interaction between the parties, wherein Bello "pitched" Falwell on the idea of purchasing a hostel business in South Beach.  *Id.* ¶ 41.  Falwell allegedly endorsed the proposal because he believed property values would continue to appreciate in Miami.  *Id.* ¶ 42.  At the end of the meeting, Falwell told Bello to "further develop the idea."  *Id.* ¶ 43.  Thereafter, Bello allegedly provided unspecified "valuable information" to help develop the business plan, but he does not identify any further direct contact with Falwell.  *Id.* ¶ 45.

The timeline in the Amended Complaint does not provide an opportunity for the parties to have reached and communicated a "meeting of the minds."  Assuming the accuracy of the

allegations, Plaintiff fails to articulate an enforceable oral contract because numerous essential terms remained open for future negotiation.

<blockquote>1.      **The Alleged Contract Lacks Essential Terms.**</blockquote>

Plaintiff has not and cannot articulate specific terms governing the proposed business venture. An oral contract remains subject to the basic requirements of contract law, including the specification and articulation of essential terms. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (citing *W.R. Townsend Contr., Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999)). In order to be binding, a contract must be definite as to the parties' obligations to one another. *See Shay v. First Fed. of Miami, Inc.*, 429 So. 2d 64 (Fla. 3d DCA 1983).

At the time of the alleged meeting, the proposed business venture was nothing more than a "pitch." Am. Compl. ¶ 41. A specific property had not been identified, and the parties' respective roles in the future enterprise, if any, remained undefined and uncertain. Indeed, neither the plaintiff nor the defendant in this action ever acquired an ownership interest in Alton Hostel, LLC. *Id.* ¶ 19 n.1 (conceding Falwell's lack of a direct ownership interest). If Bello was supposed to be an owner, what percentage interest was he promised? How would company profits and losses be divided among the members? How would the purchase of real estate be financed? Would there be personal guarantees? What were the expected capital contributions? What "valuable information" did Bello contribute to the business plan? How long a term of employment was Bello promised? What salary would he be paid for his services? The Amended Complaint answers none of these essential questions, which concern both the alleged promise to convey an ownership interest, as well as the alleged promise of future employment.

In *Dreyfuss v. Dreyfuss*, 701 So. 2d 437 (Fla. 3d DCA 1997), the Third District considered a trial court's refusal to enforce a vague oral contract concerning a potential business venture. According to the plaintiff, his father offered to pay him a percentage of the future revenues of the father's company, if the son joined the company full time. *Id.* at 438. The Third District confirmed that the parties could not have had a "meeting of the minds" because: (1) the son was unsure of whether his agreement was with his father as an individual or with the corporation; (2) the son was unsure of the duration of the agreement; (3) the son could not recall the financial specifics of the arrangement; and (4) there was no discussion regarding how to dissolve the partnership. *Id.* at 439–40. In the present case, Plaintiff is equally unable to define the same material terms about Falwell's alleged promise that the parties would share ownership in a future business venture.

As for the promise of future employment, Florida adheres strictly to the principle that an employment contract must include definiteness and certainty in its terms. *Muller v. Stromberg Carlson Corp.*, 427 So. 2d 266, 268 (Fla. 2d DCA 1983). If the duration of employment is not fixed, then any promise of employment is terminable at the will by either party without cause. *Id.*; *see also Smith v. Smith*, 375 So. 2d 1138 (Fla. 3d DCA 1979) (setting aside a contract conveying a property interest because it lacked a definite duration). Because Plaintiff fails to allege the proposed duration, job duties, or salary for the managerial position, he failed to adequately allege a future expectancy arising from an enforceable employment agreement. In sum, the Court should dismiss the breach of contract claim because Plaintiff failed to articulate the essential terms concerning the alleged business venture and the alleged future employment.

### 2. The Lack of Specific Terms Renders the Contract an Unenforceable Agreement to Agree.

Without those essential terms, the alleged promise to go into business together is nothing more than an unenforceable agreement to agree. There cannot be a "meeting of the minds between

the parties" if essential terms are left open for future consideration or negotiation.  *See Webster Lumber Co. v. Lincoln*, 94 Fla. 1097, 115 So. 498, 502 (1927); *see also Dows v. Nike, Inc.*, 846 So. 2d 595, 602 (Fla. 4th DCA 2003).  That is precisely the scenario alleged in the Amended Complaint.

Plaintiff claims to have been the one to initially "pitch" the idea of purchasing and operating a hostel business to Falwell.  Am. Compl. ¶ 42.  After the pitch, Falwell asked "Bello to further develop the idea from concept to acquisition by continuing to provide ideas and information." *Id.* ¶ 43.  At the time of the alleged contract formation, Bello was allegedly promised an *uncertain* ownership interest and an *unspecified* employment opportunity, *if* Bello developed a suitable business plan *and* a viable property was identified and purchased.  The undetermined and preliminary nature of the alleged agreement renders it unenforceable.

For example, in *Bergman v. DeIulio*, 826 So. 2d 500 (Fla. 4th DCA 2002), an accountant and an architect formed a rough plan to develop an office building, but they never agreed on all the essential terms to implement the plan.  *Id.* at 502.  After construction began, the architect decided that he would prefer to simply be paid for his services, and litigation ensued.  The trial court "determined that there was an insufficient meeting of the minds to form an enforceable contract;" but the court also found that the parties had entered "into an [enforceable] executory agreement to enter into a partnership at a future time for the construction of an office building." *Id.* at 503.  The Fourth District overturned the decision, finding that the indefiniteness of the proposed terms precluded contractual or equitable enforcement of the parties' "agreement to agree." *Id.* at 504.

Because the Amended Complaint fails to identify essential terms and instead describes an unenforceable agreement to agree, Plaintiff has failed to allege facts to support a claim for breach of contract.

**B.    A "De Facto" Owner Cannot be Held Directly Liable for the Alleged Debts of a Properly Formed Limited Liability Company.**

By summarily concluding that Falwell is the "de facto" owner of the resulting business entity, Plaintiff seeks to hold him personally and exclusively responsible for Bello's lack of an equity interest in the business, loss of profits from the operation of the business, and the loss of salary and benefits from a proposed managerial position.  Am. Compl. ¶¶ 13, 60.  Those alleged obligations were never Falwell's individual responsibility to satisfy.  Each alleged breach and resulting damage could only have been satisfied by the future business entity and its members.  For example, it does not make sense, nor is it alleged, that Falwell promised to personally pay Bello a managerial salary.

The alleged oral contract is legally unenforceable even if Falwell were the "de facto" owner of Alton Hostel, LLC because there is no legal justification to pierce the veil of the limited liability company.  Under Florida law, owners are not liable for the alleged debts of a distinct business entity:

> A debt, obligation, or other liability of a limited liability company is solely the debt, obligation, or other liability of the company.  A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the company solely by reason of being or acting as a member or manager.

Fla. Stat. Ann. § 605.0304 (2019).  The Amended Complaint provides no legal justification for treating a "de facto" owner any differently than an ordinary owner, and therefore, direct liability should be denied.

Case No. 2017-021496-CA-01

C.      **Plaintiff's Oral Contract Claim is Barred by the Statute of Frauds.**

Plaintiff's direct claim against Falwell is further barred by Florida's statute of frauds, which bars claims seeking the enforcement of unwritten contracts to hold an individual responsible for the alleged debts of another entity.  The statute states in relevant part:

> No action shall be brought whereby to charge…the defendant upon any special promise to answer for the debt, default or miscarriage of another person…unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

Fla. Stat. § 725.01 (2019).  The Florida Supreme Court has explained that "the Statute of Frauds is a legislative prerogative, grounded in a policy judgment that certain contracts should not be enforced unless supported by written evidence."  *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So.3d 85, 93 (Fla. 2013) (citing *Tanenbaum v. Biscayne Osteopathic Hosp., Inc.*, 190 So.2d 777, 779 (Fla. 1966)).  Accordingly, "[t]he statute should be strictly construed to prevent the fraud it was designed to correct, and so long as it can be made to effectuate this purpose, courts should be reluctant to take cases from its protection."  *LaRue v. Kalex Constr. & Dev., Inc.*, 97 So.3d 251, 253 (Fla. 3d DCA 2012) (quoting *Yates v. Ball*, 181 So. 341, 344 (Fla. 1937)).

The Statute of Frauds was designed to "intercept" actions precisely like the one at hand by preventing claims "based on nothing more than loose verbal statements or mere innuendos." *Tanenbaum*, 190 So. 2d at 779 (quoting *Yates*, 181 So. at 344 (1938)); *see also Rowland v. Ewell*, 174 So. 2d 78, 80 (Fla. 2d DCA 1965).  Plaintiff alleges that he lost out on "[p]rofits from the operation of the hostel business" as well as "salary and benefits," but he concedes that Falwell possesses no actual ownership interest in the business entity that was supposed to provide those benefits.  *Compare* Am. Compl ¶ 19 n.1, *with* ¶ 60.  The Statute of Frauds precludes enforcement of an oral contract to hold someone responsible for the debts of another.

The writing requirement is strictly enforced.  In *First Guaranty Corp. v. Palmer Bank and Trust Co. of Fort Myers, N.A.*, 405 So. 2d 186 (Fla. 2d DCA 1981), the Second District held that corporate defendants could not be held as guarantors on a note and mortgage that they did not sign. *Id.* at 188.  The requirement for a signed writing was not satisfied by evidence that the defendants had signed a joint venture agreement, as well as five separate guaranty agreements with the obligor on the note, all of which related to the parties' ongoing real estate venture. *Id.* at 190.

Here, Plaintiff cannot present a single writing exchanged with Falwell.  Plaintiff has not presented any written agreements, nor has he presented even a letter, text message, or email evidencing the parties' relationship.  There is simply no evidence to bolster the alleged business agreement.   Under such circumstances, Plaintiff should not be allowed to proceed with a completely unsupported claim that has malingered, nearly idle, for over two years.

**CONCLUSION**

WHEREFORE, Defendant Jerry Falwell, Jr. respectfully requests that the Court enter an Order dismissing the Amended Complaint filed by Gordon Bello with prejudice, and that the Court award such other and further relief as it deems appropriate.

Respectfully submitted this September 10, 2019.

> LAW OFFICES OF JOSHUA SPECTOR, P.A.
> 283 Catalonia Avenue, Suite 200
> Coral Gables, Florida 33134
> Tel. (786) 786-7272
>
>
> By:    s/ Joshua Spector
> Joshua Spector, Esq. (FBN 584142)
> joshua@spectorlegal.com
> *Counsel for Mr. Falwell*

Case No. 2017-021496-CA-01

**CERTIFICATE OF SERVICE**

I certify that, on the date provided below, a true and correct copy of the foregoing document

is being served, pursuant to Rule 2.516(b), Fla. R. Jud. Admin., *via* Florida Courts e-Filing Portal

to the names and e-mail addresses provided by all parties, counsel of record, and *pro se* parties,

including:

> Michael L. Addicott, Esq. (FBN 456446)
> ADDICOTT & ADDICOTT, P.A.
> 900 N. Federal Highway
> Hallandale, FL 33009
> Tel: (954) 454-2605
> mlaesq@addicottlaw.com
> *Counsel for Plaintiff*

> s/ Joshua Spector
> Joshua Spector, Esq. (FBN 584142)
> joshua@spectorlegal.com

## Electronic Articles of Organization
## For
## Florida Limited Liability Company

L13000019737
FILED 8:00 AM
February 07, 2013
Sec. Of State
jbryan

### Article I

The name of the Limited Liability Company is:

ALTON HOSTEL, LLC

### Article II

The street address of the principal office of the Limited Liability Company is:

810 ALTON ROAD
MIAMI BEACH, FL. US  33139

The mailing address of the Limited Liability Company is:

3200 SUNNYMEADE ROAD
RUSTBURG, VA. US  24588

### Article III

The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

### Article IV

The name and Florida street address of the registered agent is:

HURD, HORVATH & ROSS, P.A.
8295 N. MILITARY TRAIL
STE A
PALM BEACH GARDENS, FL.  33410

Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.

Registered Agent Signature:   DAVID E. HORVATH

## Article V

The name and address of managing members/managers are:

**L13000019737
FILED 8:00 AM
February 07, 2013
Sec. Of State**
jbryan

Title: MGRM
TREY FALWELL
3200 SUNNYMEADE ROAD
RUSTBURG, VA. 24588 US

Signature of member or an authorized representative of a member

Electronic Signature: TREY FALWELL

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true. I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.