IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GORDON BELLO f/k/a
JESUS FERNANDEZ, JR.,

    Plaintiff,

vs.                                                                                                  Case No.:1:19-cv-23825-UU

JERRY FALWELL, JR.,

    Defendant.

## Defendant's Response to Order to Show Cause [D.E. 4]

Defendant, Jerry Falwell, Jr. ("Falwell"), responds to this Court's September 13, 2019, *Order to Show Cause* [D.E. 4] as follows:

Under three, mutually exclusive bases, the filings before this Court and the supplemental material attached here demonstrate that Plaintiff, Gordon Bello's ("Bello's"), Amended Complaint against Falwell seeks damages exceeding $75,000.[1] *First*, Bello's claim for a manager's salary plainly exceeds $75,000. *Second*, Bello's claim for 24.9% of the equity in Alton Hostel, LLC – including with regard to its $3.8 million property – surpasses the $75,000 amount-in-controversy threshold. *Third*, Bello's settlement demands prior to removal also surpass $75,000.

Diversity jurisdiction exists when the amount in controversy exceeds $75,000, exclusive of interest and costs, and the plaintiff and the defendant are citizens of different states. 28 U.S.C. § 1332(a). Here, there is no dispute that the parties are citizens of different states; the only issue is whether the amount in controversy supports removal to this Court.

---

[1] Falwell contests both Bello's right to recover damages and the amount of the damages that could be recovered. This Response is intended to address damages claimed by Bello.

As the Court noted in its *Order to Show Cause*, the Amended Complaint seeks damages "well in excess of $15,000." D.E. 1-4 ¶ 10. Specifically, Bello seeks (1) a membership and managerial interest in Alton Hostel LLC ("Alton"); (2) an equity interest in Alton; (3) a previously-promised managerial salary and accompanying benefits; and (4) lost profits "from the operation of the hostel business and the rentals of the other spaces purchased as part of the Alton Road Property." *Id.* ¶¶ 13(a)-(c), 49, 60(a)-(c).

"Where, as here, the Complaint seeks an unspecified amount of damages, Defendant must establish the amount in controversy by a preponderance of the evidence." *Katz v. J.C. Penney Corp.*, 2009 WL 1532129, at *3 (S.D. Fla. June 1, 2009). Importantly, the "[C]ourt's analysis of the amount-in-controversy requirement focuses on how much is in controversy *at the time of removal, not later*." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (citation omitted)). To this end, Falwell "may introduce a wide range of evidence in order to satisfy the jurisdictional requirements of removal," including his "own affidavits, declarations, or other documentation." *Hayes v. ABG Caulking & Waterproofing, Inc.*, 2010 WL 11602103, at *3 (S.D. Fla. Aug. 31, 2010) (Ungaro, J.) (quoting *Pretka*, 608 F.3d at 755). Here, there can be no doubt that at the time of removal, Bello's claims presented an amount in controversy exceeding the jurisdictional threshold.

***Bello's Claimed Salary Damages Exceed $75,000***. Bello's claim for salary, alone, exceeds the jurisdictional threshold of $75,000. Bello seeks a manager-salary equal to that paid to Alton manager and member, Giancarlo Granda ("Granda"):

> 12. Defendant Falwell entered into a contract with Plaintiff Bello whereby Falwell agreed that in exchange for Bello's assistance in arranging for a suitable business venture in Florida that ==Bello and Granda would receive equal equity interests and benefits==, including positions and salaries as co-managers, of the business.

D.E. 1-4 at ¶ 12 (highlight added); *see also id*. at ¶ 60(b).

As a manager of Alton, Granda has earned $108,944.00 in salary. Affidavit of Jerry Falwell, III, at ¶5, attached as <u>Exhibit 1</u>. Because Bello seeks an equivalent salary to Granda, Bello's existing salary-claim damages in the Amended Complaint are at least $108,944.00 – well above the $75,000 amount-in-controversy threshold.

**Bello's Alleged Equity Interest Damages Exceed $75,000**. Bello also seeks an equity interest in Alton. According to Bello, Alton owns real property in Miami Beach: a commercial property on which the entity operates a hostel and leases out space for other commercial tenants. D.E. 1-4 at ¶ 14. The equity stake in Alton that Bello demands necessarily includes a claim to Alton's valuable commercial property in Miami Beach – not to mention his claim for other value in the company.

Indeed, in his Amended Complaint, Bello makes a claim for an "equal equity interest[ ]" to that held by Granda:

> 12. Defendant Falwell entered into a contract with Plaintiff Bello whereby Falwell agreed that in exchange for Bello's assistance in arranging for a suitable business venture in Florida that ==Bello and Granda would receive equal equity interests and benefits==, including positions and salaries as co-managers, of the business.

D.E. 1-4 ¶ 12 (highlight added). See also:

> 30. The contract that is the subject of this lawsuit was breached in Miami-Dade County, Florida by Falwell's failure to perform acts in Miami-Dade County that he agreed to do; namely, to <mark>provide Bello with an equal share in the equity interest and benefits that Granda would receive, including a salaried position to co-manage</mark> the Alton Road Property hostel business known as Alton Hostel LLC.

D.E. 1-4 ¶ 30 (highlight added).

Granda holds 24.9% of the equity of Alton. Affidavit of Jerry Falwell, III at ¶6 (Exh. 1).

Public records maintained by the Miami-Dade County Property Appraiser over the past three years include appraisals of the Miami Beach property Alton owns. During this time, Miami-Dade County valued Alton's commercial property in Miami Beach as follows:

    2019:  $3,800,000

    2018:  $4,600,000

    2017:  $4,600,000

True and correct copies of self-authenticating public records from the Miami-Dade County Property Appraiser's Office are attached here as <u>Composite Exhibit 2</u>.

Again, Bello wants an equity stake in Alton equal to that of Granda. Based on public appraisals, a 24.9% interest in the real property easily exceeds the $75,000 jurisdictional threshold.

***Bello Has Long Valued This Case Far in Excess of $75,000.*** As proffered to this Court in Falwell's *Notice of Removal* [D.E. 1], as of that time, Bello had made settlement demands well

in excess of $75,000.²

      Falwell may submit settlement demands as evidence of the jurisdictional allegations for the purpose of evaluating diversity jurisdiction. *Katz*, 2009 WL 1532129, at *4-6 (permitting consideration of pre-suit demand letter in determining amount in controversy over Section 90.408 objection, and citing cases reaching similar result); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim"); *McPhail v. Deere Co.*, 529 F.3d 947, 956 (10th Cir. 2008) (following *Cohn* on admissibility of settlement communications and holding "[t]he amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation. To this end, documents that demonstrate plaintiffs['] own estimation of its claim are a

---

² Falwell believes the parties recently reached an agreement-in-principle concerning a dollar amount to resolve this dispute. The agreement-in-principle was reached *after* the case was removed and *after* the Court issued its Order to Show Cause. However, Bello now claims that intervention of a *state* court is necessary to clarify a term of the resolution, thereby leaving Falwell uncertain as to the status of the agreement-in-principle. In any event, what is certain is that this dispute remains open and has not been formally "settled." Moreover, a post-removal agreement as to a settlement amount in no way defeats this Court's subject matter jurisdiction with respect to the amount in controversy. This is so because the relevant inquiry is "how much is in controversy *at the time of removal, not later*." *Pretka*, 608 F.3d at 751 (emphasis added). The financial arrangement the parties may have agreed to post-removal is, therefore, of no consequence. The Supreme Court has recognized that "[i]f the plaintiff could, no matter how bona fide his original claim in state court, reduce the amount of [her or] his demand to defeat federal jurisdiction[,] the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938). For this reason, a plaintiff "does not deprive the district court of jurisdiction" where, post-removal, he "reduces the claim below the requisite amount." *Id.* at 292. Were the rule otherwise, a plaintiff could defeat the very purpose of the removal statute by pleading open-ended damages claims in their Complaint (as plaintiff did here by seeking damages "exceeding" $15,000), thereafter make settlement demands grossly exceeding the amount-in-controversy threshold (again, as plaintiff did here), and then, once the defendant removed the case based on diversity jurisdiction, attempt to defeat this Court's jurisdiction by agreeing to accept a settlement amount of $75,000 or less just to keep the case in state court (again, as plaintiff did here). That is pure gamesmanship and is not, and cannot be, the law.

proper means of supporting the allegations in the notice of removal, even though they cannot be used to support the ultimate amount of liability.").

Neither Federal Rule of Evidence 408 nor Section 90.408, Florida Statutes, prohibits the use of settlement offers for this purpose. *Cohn*, 281 F.3d at 840 n.3 ("We reject the argument that Fed. R. Evid. 408 prohibits the use of settlement offers in determining the amount in controversy. Rule 408 disallows use of settlement letters to prove 'liability for or invalidity of the claim or its amount.'"); *Katz*, 2009 WL 1532129, at *4 ("[S]trict application of Rule 408 is not necessary when judicial officers are attempting to discern the amount in controversy for purposes of deciding whether the Court's jurisdiction has been properly invoked") (citation omitted); *Gleaton & Demaria Commercial Dev., LLC v. Westchester Surplus Lines Ins. Co.*, 2018 WL 8496001, at *1 n.1 (N.D. Fla. Sept. 21, 2018) (regarding both Rule 408 and Section 90.408, following *Katz*); *Stratmann v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 12861146, at *1 (M.D. Fla. July 28, 2015) (holding that section 90.408 did not bar the consideration of settlement demands in determining the amount in controversy for removal purposes). "Moreover, the Eleventh Circuit has implicitly found that settlement offers may be considered when a court is attempting to determine the true amount in controversy." *Gleaton & Demaria Commercial Dev., LLC*, 2018 WL 8496001, at *1 n.1 (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994)) (holding that the case be remanded to state court after considering Plaintiff's $45,000 settlement offer as proof the claim did not satisfy the amount in controversy requirement).

Undersigned counsel met and conferred with counsel for Bello on whether Bello would object to undersigned counsel apprising this Court of Bello's settlement demands, including Bello's specific dollar-amount demands pertaining to:

- Bello's claim for salary;

- Bello's claim for lost profits; and

- Bello's claim for equity in Alton.

The parties corresponded on this demand and the elements thereof, including in e-mails.[3]

Bello would not agree, and objects to Falwell publishing what Bello contends are confidential and inadmissible settlement communications with demands by Bello.[4]

Falwell wishes to be respectful of the protections afforded parties by Rule 408 and Section 90.408, Florida Statutes. Nonetheless, given the authority set forth above, counsel's settlement communications concerning the value of Bello's claims may be considered when analyzing the amount-in-controversy in this lawsuit.

As such, if the Court is not persuaded to find that the jurisdictional threshold amount is met by (1) Bello's manager-salary claim or (2) Bello's 24.9% equity claim including as to the $3.8 million real property asset of Alton Hostel, Falwell respectfully requests this Court's instruction on how it would receive the settlement communications (e.g., in camera or under seal). For purposes of meeting this Court's deadline in the *Order to Show Cause*, however, Falwell respectfully presents this proffer of settlement communications as a third, independent basis for showing the jurisdictional threshold.

Respectfully submitted,

By:   s/Joshua Spector
Joshua Spector, Esq. (FBN 584142)
joshua@spectorlegal.com
LAW OFFICES OF JOSHUA SPECTOR, P.A.

---

[3] Falwell concedes that Bello has amended his Complaint since making his prior demands. However, the damages sought by Bello are essentially the same.

[4] Only *after* removal, Bello states that his damages do not meet the jurisdictional threshold. Yet Bello has not amended his pleading or otherwise limited his claims since the point of removal. As set forth above, Bello continues to seek (1) salary equal to Granda, (2) lost profits, and (3) equity of 24.9% of Alton, inclusive of its $3.8 million real property in Miami Beach, Florida.

283 Catalonia Avenue, Suite 200  
Coral Gables, Florida 33134  
Tel. (786) 786-7272  
*Counsel for Mr. Falwell*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 25, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Joshua Spector  
*Counsel for Mr. Falwell*